### ANN OLIVER v. MARY OLIVER and others.

The testator by his will gives personal and real estate in trust to provide a home or residence for his daughters, the survivor or survivors of them, so long as they remain single and unmarried. *Held* that the trustee was bound to provide one home or residence for all the daughters, and not a home or residence for each one separately.

If the trustee, by her misconduct, deprives the cestui que trust of the free enjoyment of the trust fund in the mode pointed out by the testator, equity may direct that she shall enjoy it in a different mode.

[Oliver v. Oliver et al.]

But this court will not interfere with the appropriation of the trust fund so as to direct it differently from the intention of the testator, except in a very clear case.

A mere difference of opinion among the cestui que trusts, or an indisposition to live under the same roof, will not be sufficient.

* An amicable adjustment of a family controversy recommended, and the opinion of the court withheld to afford an opportunity for that purpose.

THIS bill was filed by the complainant, as one of the legatees and cestui que trusts under the will of her father, John Oliver, deceased, against the executrix and trustees named in the will. The prayer of the bill is, that an account of the personal estate may be rendered by the executrix; that the will may be established; that an account may be taken of the trust fund; and that the trusts may be performed under the direction of the court. The grounds of the relief sought for by the complainant, are stated in the opinion of the chancellor.

*W. Halsted* and *Wall,* for complainant.

*H. W. Green* and *Southard,* for defendants.

THE CHANCELLOR. John Oliver died at Bordentown, in the county of Burlington, in the latter part of April, eighteen hundred and twenty-four, leaving a last will and testament duly executed to pass real estate. After disposing of sundry specified parts and portions of real and also of personal property, he gave all his writings, notes, bills, bonds, stock, and debts due to him, to his daughter Mary, in trust to pay all his debts and expenses, and to divide the residue into ten equal parts or shares; one for each of his sons, viz. John, Washington, Franklin, and Thomas; and one for each of his daughters, viz. Elizabeth, Margaret, Rebecca, Ann, and Mary. The remaining share he gave to Mary in trust, to manage the same for the aid and assistance of Sarah, the wife of his son Robert, and their children, in such

* NOTE. In compliance with the recommendation of the chancellor, the cause was settled by the parties.

47

[Oliver v. Oliver et al.]

way and manner as she the said Mary, in prudence, might judge best; and directed that no person should call her to a settlement; that her own prudence and conscience should be her guide and judge. The will then makes the following provision:—"Item. All the residue of my real estate in Bordentown and Chesterfield, also in Bucks county, Pennsylvania, together with all the residue of my personal estate of every description whatsoever, and wheresoever the same may be, I give to my son Thomas Oliver and his heirs, and to my daughter Mary and her heirs, *in trust*, for the uses and purposes herein after mentioned; that is to say, in order to provide a home or residence for my daughters Mary, Margaret, Ann, and Rebecca Oliver, the survivor or survivors of them, so long as they remain single and unmarried. It is my will that my said daughters, the survivors or survivor of them, shall have and hold the aforesaid residue for and during the time my said daughters, the survivors or survivor of them, remain single and not married. Also it is my will that my daughter Mary shall receive the rents and profits of the said residue for the use of herself and sisters, and have the care and management of the family; and that the annual proceeds of my point fishery at William Moon's, shall be subject to the payment of Ann Brookes Radstrake's legal demands against my estate, and to be paid by my said daughter Mary." The testator then directs, that at the termination of the estate thus given to his single daughters, the trustees shall sell it, and divide the net proceeds among all his children; and of his said will appointed his daughter Mary sole executrix—who duly proved the same, after the decease of the testator, before the surrogate of Burlington.

The bill is filed by Ann Oliver, against Mary Oliver, as executrix, for an account of the personal estate; and against her and Thomas P. Oliver, as trustees under the will; and especially against Mary as one of the trustees, specially entrusted with the receipt of the rents and profits of the trust property, and the appropriation of them according to the will; and charges that they have been misapplied, and that complainant has been obliged by mal-treatment on the part of Mary, to leave the house,

[Oliver v. Oliver et al.]

and cannot reside with her; and prays that an account may be taken, and the will established, and the trusts performed, under the direction of this court.

The answer denies the charges of misapplication, mal-treatment, &c.; and insists that if Ann, the complainant, has not received her full proportion of the fund, it is because she refuses to live with the rest of the family; that she has voluntarily, and without cause, left them, and taken up her residence elsewhere.

On looking into this case, it appears, that the executrix has long since settled up the personal estate according to law; and that the complainant has received her share or proportion of that part which remained for distribution, according to the will, after the payment of debts and expenses. That part of the case may, therefore, be laid out of view. The bill sets up no charge of fraud or mistake; and I do not perceive any ground to impeach the settlement before the orphans' court, nor is such impeachment intended.

The controversy between these parties grows out of that trust in the will which was created for the benefit of the unmarried daughters. Rebecca, one of the daughters, is dead; Mary, Ann, and Margaret, remain unmarried. A family difficulty exists, and has existed for a number of years. It commenced, as near as can be ascertained from the evidence, shortly before the death of the testator. Ann has, in consequence of it, left the family; and insists that, according to the true construction of the will, she is not compelled to live with them; or if such was the meaning of the testator, that by unkind and improper treatment she has been compelled to leave the house and take her residence elsewhere; and that she is entitled to receive her proportion of the rents and profits annually, at the hands of Mary her sister. All this is resisted on the part of Mary, as opposed to the intention of the testator.

As to the true construction of the will on this subject, I cannot entertain any doubt. The testator intended, as it appears to me, that the unmarried sisters should live together as one family,

having one common home, until they should marry. Mary is constituted the special trustee. All the proceeds of the trust property were to come into her hands. The testator placed unlimited confidence in her prudence and integrity, and he constituted her the head of the family. He expressly declares the trust to be, to provide a home or residence for his unmarried daughters and the survivors and survivor of them. The natural signification of this phrase appears to be, one home, one residence for all, and not a home and residence for each one separately. They had always had a common home. They were destitute of a mother; and it is just and reasonable to suppose that the testator intended and desired that they should continue to reside together as they had theretofore done. A subsequent part of the clause strengthens this construction, and places the matter in a very clear point of view to my mind. He not only makes Mary the receiver of the whole fund for their use, but gives to her " the care and management of the family." He contemplates, of course, the existence of a family after his departure; and as it is meet that every family should have a head, he appoints a head for this one. If such was not the intention, it is scarcely probable that the testator would have divided the duties of the trustees, and placed the whole receiving and disbursing power in the hands of one, and that one a female. If each daughter were to receive a proportion, or might claim it at her pleasure, why not order a distribution at once, and if they chose to live together they could do so without any direction from the testator. This would have been the more natural course.

Upon the face of the will itself, I think there should be no difficulty as to the construction. And the testator had good reason for such a provision. His property was not large, and his children were numerous. These daughters received as their share of the divisible property only four hundred and thirty-three dollars and ninety-nine cents. The avails of the trust fund were limited, for the profits of the fishery were appropriated to the payment of an old debt. He knew that as one family they could live much more economically than they could in any other

way, and [withal more respectably; and he arranged the provisions according to his own just views of propriety.

For these reasons, I am of opinion that the construction sought to be given to this trust clause by the complainant, is not the true one.

It remains to inquire, whether she is entitled to relief on the second ground, viz. that her treatment has been such from Mary as to render it impossible to reside with her as a member of the same family. The complainant insists that she has really been driven away; and she seeks, on that ground, to have an account taken, and her share or proportion of the proceeds of the trust property paid to her.

This inquiry opens up the whole family controversy. The evidence in relation to it is very voluminous, and to spread it out before the public would be profitless to the court, and discreditable to the family. I shall not attempt it. There is blame, probably, on both sides; and it would be of little importance to ascertain with certainty who deserves the greater share. One thing is certain; this court will not interfere with the appropriation of this trust fund, so as to direct it differently from the intention of the testator, except in a very clear case. A mere difference of opinion among the cestui que trusts, or an indisposition to live under the same roof, will not be sufficient. Difficulties existed in the family of the testator before he died, and he must have known it. Yet he made no alteration in his will.

I am prepared to express an opinion, which, so far as the judgment of this court goes, will settle the legal rights of the parties for the present. But in my view this is a case peculiarly proper for amicable adjustment. If these sisters have friends, it is very desirable that an effort at reconciliation should be made, yet again. The intention of the testator is now ascertained. Possibly it may be acquiesced in; and if so, it might be a happy circumstance, and tend to the peace of the whole family. It would be better than if done under the direction of the court.

If a reconciliation is impossible, some terms as to the proportion of the rents, &c. which the complainant would be willing to

receive, or which the defendants would be willing to give, might be agreed on ; and this, too, would be better than if done under the direction of the court.

The restoration of peace to this family, is of much greater importance than the settling of any principles of law, in the decision which the court may be called to make. I recommend that the effort be made. This course may seem novel ; but there are precedents to justify it ; and in almost all of them, the recommendation of the court has had the desired effect.